CUNNINGHAM, J.,
CONCURRING IN RESULT:
I agree in the result of this excellent opinion. However, I believe that the Appellant should have been allowed to testify concerning Jeff Springer wanting “to frame him because Geary provided testimony in an unrelated murder case years prior to the robbery in question.” However, such error was harmless.
NOBLE, J.,
CONCURRING IN RESULT:
Under KRS § 31.185, an attorney representing an indigent criminal defendant is “entitled to use the same state facilities for the evaluation of evidence as are available to the attorney representing the Commonwealth.” The statute places no explicit limit on that right. Nonetheless, the majority applies both the criminal rules related to discovery and the evidentiary rules related to authentication to the statute to reason that access to state facilities is limited to situations that are likely to result in the discovery of relevant evidence. From *362 this, the majority concludes that there was no error in denying Geary access to state facilities to have DNA testing done on the bandana. I must respectfully disagree with the approach.
As I’ve already noted, the statute includes no express limit on a defense attorney’s access to state facilities. The statute instead literally entitles them to access. The rules of criminal procedure and evidence have no bearing on what the statute means or what rights it grants to attorneys defending indigent defendants. The very purpose of the statute is to level the evidentiary playing field, allowing defendants of little means to compete with the might of the state. It does so by granting publicly provided defense attorneys the same access to state facilities that the state itself has.
Implicit in this is a limit of course: a defense attorney may have items tested only to the same extent that a prosecutor may do so. Thus, the statute would not allow a defense attorney to have evidence wholly unrelated to a case tested (e.g., DNA in the attorney’s own paternity action), just as a prosecutor would not be entitled to such personal use of state facilities. Of course that would be waste, fraud, and abuse.
But such personal use, or use unconnected to the defendant’s case, is not what was proposed in this case. The defense attorney wanted evidence tested that the police had collected in the course of its investigation. There is no question that the evidence was related to the case.
Had the Commonwealth sought testing of this evidence, no one would question the propriety of such action. And had such testing revealed the presence of Geary’s DNA on one of the bandanas, there is little question that the Commonwealth would have sought to use that evidence against Geary. To the extent that the Commonwealth could have properly tested the evidence, Geary should be allowed the same opportunity. Indeed, the statute entitles his lawyer to such access. Thus, I can only conclude that it was error for defense counsel to have been denied access to state facilities.
It is no answer that the trial court had discretion to deny Geary’s motion to have the items tested. The only reason he had to move the court for such an order is that the bandanas were in the Commonwealth’s custody. Had Geary wanted evidence tested that was in his possession, he would not have needed a court order. If a state facility were to deny testing in such circumstances, it would be acting in contravention of the statute, and resort to a court order might then become necessary. But again, such an order should not be necessary, absence questions about the propriety of the testing (such as that it was unrelated to the case at all). To the extent that Geary’s counsel did ask for a court order and was denied one, it was error for the court to deny the motion.
The question, then, is whether the error was harmless. Geary’s primary defense was that another person committed the crime and that he had been framed. He sought DNA testing of the bandana in the hopes that his alleged alternative perpetrator had in fact been wearing one of them. Had the testing shown such results, that evidence would have been support for Geary’s defense theory of alternative perpetrator.
But Geary was also limited by the trial court in how much explanation he could make about his rationale for blaming an alternative perpetrator, which also gives me some concern, but not to the level that I can say the trial court abused its discretion. Here, he sought the DNA testing as part of the investigative process in craft *363 ing his alternative perpetrator defense leading into the trial. Of course his approach at that point was speculative. That is the whole point of investigation: to find out what happened. It necessarily requires speculation or, to use a kinder word, hypothesizing, and subsequent testing of any hypotheses to determine if they present a viable theory of the case. If we knew beforehand what the evidence would show, testing would be unnecessary. Thus, that Geary’s counsel was “speculating” about the bandana also is no answer.
The harmless error rule requires us to “disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.” RCr 9.24. We have further interpreted this rule to mean that an error is harmless “if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error.” Winstead v. Commonwealth, 283 S.W.3d 678, 689 (Ky.2009) (citing Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). If the error had a “substantial influence” on the jury or “or if one is left in grave doubt, the conviction cannot stand.” Id. (quoting Kotteakos, 328 U.S. at 765, 66 S.Ct. 1239).
Here, because the testing was disallowed, we do not know if there was evidence to support Geary’s alternative perpetrator defense on the bandana. To do harmless error analysis, we must assume that there would have been evidence that Springer had worn the bandana. If he had, what would be the effect? If Geary had been allowed to fully develop his alternative perpetrator theory, this evidence would support that Springer at least had the opportunity to have been the perpetrator. Coupled with everything Geary wanted to prove about his claim of alternative perpetrator, this could have shored up that claim.
But, standing alone, Springer’s DNA on the bandana is not exculpatory, because it does not rule out Geary as wearing a different black bandana to commit the crime. Consequently, when weighed against the strength of the evidence against Geary, I cannot say that had Springer’s DNA been on the bandana, and had such evidence been admitted, that it would have substantially affected the verdict. Therefore, I concur in result.